The PEOPLE of the State of Colorado, In the Interest of L.M., M.J., and J.J., Children, Upon the Petition of the El Paso County Department of Social Services, Petitioner–Appellant,

and

Concerning M.J. and L.M., Respondents,

and

W.M., Interested Party–Appellee.

No. 95CA0440.

Colorado Court of Appeals, Div. III.

Dec. 21, 1995.

Margaret E. Gregory, Guardian Ad Litem.

Beth A. Whittier, El Paso County Attorney, Ann M. Rotolo, Deputy County Attorney, Colorado Springs, for Petitioner–Appellant.

No Appearance for Interested Party–Appellee.

Opinion by Judge RULAND.

Petitioner, the El Paso County Department of Social Services (department), appeals from an order of the district court requiring it to pay certain foster care funds to W.M. as the maternal grandfather of three children adjudicated to be dependent and neglected. We affirm.

Based upon the abbreviated record on appeal as well as the undisputed facts contained in the briefs of the parties, it appears that the children were residing with W.M. A hearing relative to permanent custody was held on December 6, 1994. The magistrate entered a written order on January 7, 1995, awarding legal custody of the children to the department and ordering it to pay foster care funds to W.M. retroactive to the date of the hearing on December 6.

The department requested review by the district court of the order to pay foster care funds asserting that W.M. was not certified as of December 6, and that under the Colorado Department of Human Services Regula-tions, only certified foster care providers can be compensated. W.M. acquired the necessary certification as of January 9, 1995, and the department did not challenge the propriety of paying him for foster care after that date. The district court upheld the magistrate's order.

The department asserts that, pursuant to the rules and regulations promulgated by the state Department of Human Services, it may not be ordered to pay foster care funds to a custodian that is not certified. As a result, the department contends that, in regard to the period from December 6 to January 9, the district court violated the separation of powers doctrine by ordering the foster care payment.

Even if we assume that this issue was properly preserved for appellate review based upon this record, we conclude that the court's order should be affirmed.

In *People in Interest of J.H.*, 770 P.2d 1355 (Colo.App.1989), the district court ordered the department to place legal custody of a child with an adult in a private home. The court also required the department to reimburse the custodian for the costs of placement.

The department challenged this order on the basis that the department had not been awarded legal custody. The department argued that because it was not awarded custody, there was no duty or obligation to support the child.

Upon reviewing pertinent provisions of the Colorado Social Services Code as well as the Children's Code, a division of this court held that:

> the General Assembly intended to vest the courts with the authority to direct the local social services department to provide child welfare services, including reimbursement for the cost of private placement, when necessary to protect the welfare of the children.

*People in Interest of J.H., supra,* 770 P.2d at 1357.

While the court in *J.H.* did not specifically address the separation of powers argument asserted here, we view the opinion as instruc-

tive in its interpretation of the statutory intent. Further, the department has not cited and we find no statutory provision which precludes the court from making its order for foster care payments retroactive to the date placement is ordered if, as here, the custodian has in fact been certified as a foster care custodial parent.

Finally, to interpret the statutory and regulatory provisions in the manner argued by the department would frustrate the fundamental public policy which is to provide for the welfare and best interests of the child. See City & County of Denver v. Juvenile Court, 182 Colo. 157, 511 P.2d 898 (1973).

The order is affirmed.

STERNBERG, C.J., concurs.

BRIGGS, J., dissents.

Judge BRIGGS dissenting.

The trial court's order requiring foster care payment by the El Paso County Department of Social Services (county department) to an uncertified foster care provider was contrary to the statutory scheme for allocating scarce resources, improperly preempted the authority of the Colorado Department of Human Services (the department) to enact regulations implementing the statutory scheme, and interfered with the county department in the exercise of powers properly within its own sphere. It further required an expenditure of funds not expressly appropriated or otherwise authorized by law for that purpose. I therefore respectfully dissent.

Article III of the Colorado Constitution distributes the powers of government among the legislative, judicial, and executive departments, and one branch cannot exercise any power belonging to another. Therefore, while courts may properly invoke the inherent powers doctrine to compel appropriations or expenditures of funds for judicial purposes, the doctrine of separation of powers proscribes judicial interference with the legislative and executive branches in the performance of duties properly within their powers. Kort v. Hufnagel, 729 P.2d 370 (Colo.1986); see also § 13–8–102, C.R.S. (1987 Repl.Vol. 6A). As a result, courts are without subject matter jurisdiction to order a state agency to perform an act that only the legislative or executive branch has the authority to order that agency to perform. See Colorado State Department of Health v. Geriatrics, Inc., 699 P.2d 952 (Colo.1985).

Colo. Const. art. V, § 33, separately prohibits the disbursement of funds from the state treasury except upon appropriations made by law or otherwise authorized by law. Hence, at least when a remedy for a constitutional violation is not involved, any expenditure ordered by a court must be in accordance with an appropriation for that purpose or otherwise authorized by law for that purpose from a general appropriation.

The powers to direct the placement and supervision of children adjudicated dependent and neglected and to determine whether and how to fund those costs are not powers necessary to the proper functioning of the judicial branch. Thus, they are not within the inherent power of the courts. Nor have those powers been delegated to the judicial branch without limitation.

The General Assembly has instead enacted a statutory scheme, including the Children's Code, § 19–1–101, et seq., C.R.S. (1995 Cum. Supp.) and the Child Welfare Services Act, § 26–5–101, et seq., C.R.S. (1995 Cum.Supp.), that, together with implementing rules and regulations, establishes a comprehensive program "to serve the welfare of children and the best interests of society." Section 19–1–102(2), C.R.S. (1995 Cum.Supp.). The court's role is described in these statutes and regulations, and its power to act is limited by it. See People in Interest of C.A.G. 903 P.2d 1229 (Colo.App.1995)(court lacked statutory authority to order a county department of social services to pay the costs of providing child with an appropriate education).

A court order requiring a county department of social services to pay for foster care by an uncertified provider is beyond the power delegated to the courts in the statutory scheme. Indeed, such an order frustrates the General Assembly's goal of maximizing funding available and directing it to those whose care best serves the interests of children, families, communities, and society.

Under § 19–1–103(22), C.R.S. (1995 Cum. Supp.), " '[p]lacement out of the home' means placement for twenty-four-hour residential care in any facility or center operated *or licensed* by the department of human services, but the term does not include any placement which is paid for *totally* by private moneys or any placement in a home for the purposes of adoption . . . ." (emphasis added) Hence, funding for placement out of the home with a relative is limited to licensed providers. *See also* §§ 19–1–103(5), 19–1–103(6), & 19–1–103(12) C.R.S. (1995 Cum. Supp.)(child care centers, child placement agencies, and family care homes all must be *licensed* and approved).

Even ignoring this express definitional limitation, welfare services are to be provided for any child residing or present in the state of Colorado who is in need of such services, but only upon appropriate request and "within available appropriations." Section 26–5–102, C.R.S. (1995 Cum.Supp.). The duty of the department to reimburse expenses to county departments of social services for foster care is likewise limited to "allowable" expenses. Section 19–1–116(1), C.R.S. (1995 Cum.Supp.); *see also* § 26–5–104, C.R.S. (1995 Cum.Supp.)(department to reimburse county departments "within the limits of available appropriations"). In turn, the services the county departments are to provide to children placed out of the home must be "made available based upon the state's capacity to increase federal funding or any other moneys appropriated for these services." Section 19–3–208(1), C.R.S. (1995 Cum. Supp.). Nowhere does the statutory scheme "appropriate," "make available," or "allow" funds to be used to pay for foster care services by uncertified providers.

Indeed, if the department were to include in its regulations authorization for county departments to pay uncertified providers for foster care, it would be contrary to the express statutory requirement that implementing regulations be in accordance with the conditions accompanying available federal funding. Section 26–5–102, C.R.S. (1995 Cum.Supp.); *see also* § 19–3–208(2)(f), C.R.S. (1995 Cum.Supp.)("It is the intent of the general assembly to use existing general fund moneys which have serviced the programs described in this subsection (2) to access federal funds."). A child placed in an uncertified relative placement is not eligible for Title IV–E programs, which provide federal funding. Department of Human Services Regulation No. 7.605.2, 12 Code Colo. Reg. 2509–7. Hence, funding uncertified providers is contrary to the statutory goal of maximizing funding available for the welfare of children.

The rules and regulations the department has adopted are codified in the Code of Colorado Regulations and, at least as pertinent here, provide authorization for expenditure of available funds consistent with the statutory scheme. Department of Human Services Regulation No. 7.504.21(d)(5), 12 Code Colo. Reg. 2509–6 (at the time of the relative placement at issue here codified at No. 7.504.21(A), 12 Code Colo. Reg. 2509–6 (1992)), provides that if the local human services department retains custody and the child is placed with relatives, the department will provide foster care payments when the child is Title IV–E eligible or the placement avoids a more restrictive placement and moves the child more quickly to permanency. However, payment is authorized *only* if the relative has first satisfied the certification criteria for relative homes.

It is undisputed that W.M. had not satisfied the certification criteria for a relative home at the time the court ordered the county department to begin paying W.M. for foster care. The payment ordered was therefore not only beyond the authority delegated to the courts in the statutory scheme, it was directly contrary to validly enacted and applicable regulations, which are themselves consistent with that scheme.

The majority properly notes the public policy to provide for the welfare and best interests of the child. However, the statutory scheme recognizes this is not the only important public policy. Rather, the interests of the family, of the community, and of society must also be considered. *Cf.* § 19–3–508(5)(b), C.R.S. (1995 Cum.Supp.)("The court shall place the child in the facility or setting which most appropriately meets the needs of the child, the family, and the com-

munity."); § 19–3–701(6), C.R.S. (1995 Cum. Supp.)("The petition for review of need for placement shall request the court to determine, by a preponderance of the evidence, if placement or continued placement is necessary and is in the best interest of the child and of the community."); § 19–1–102(2), C.R.S. (1995 Cum.Supp.)("[T]he provisions of [the Children's Code] shall be liberally construed to serve the welfare of children and the best interests of society.").

Requiring certification before payments will be made for foster care even by relatives does more than just make federal funding available. It encourages the relative to complete the certification process promptly. Completion of that process helps to insure that foster parents have been sufficiently screened and trained to provide a safe and healthful environment for the child. It further results in limited resources being directed to those providers best able to provide appropriate services to dependent and neglected children. Thus, the requirement serves the best interests not only of the child, but also of the family, the community, and society, consistent with the statutory scheme.

This does not mean that because W.M. had not been certified, no assistance was available from the county department. For example, at the time of the child's placement with W.M., Department of Human Services Regulation No. 7.504.21(A)(4), 12 Code Colo. Reg. 2509–6, provided: "If the relative home is not certified for foster care, the county department shall assist the relatives in obtaining AFDC, SSI, or other resources to enable the family to care for the child. The county department shall also assist certified relative homes to access other resources."

A court has no inherent power to sit as a super legislature or executive department agency and order the allocation or expenditure of funds for the welfare of children, no matter how desirable the expenditure may appear. The trial court's order was contrary to the statutory and regulatory scheme and required an expenditure of funds not expressly appropriated or otherwise authorized by law for that purpose. See *Kort v. Hufnagel, supra; People in Interest of C.A.G., supra;* see also *McDonnell v. Juvenile Court,*

864 P.2d 565 (Colo.1993)(juvenile court lacked authority to supervise placement of juveniles committed to Department of Institutions); *Colorado State Department of Health v. Geriatrics, Inc., supra* (order reinstating license of nursing facility operator notwithstanding regulations violated separation of powers doctrine). To the extent the decision in *People in Interest of J.H.,* 770 P.2d 1355 (Colo.App.1989) is to the contrary, I would decline to follow it.